# United States Court of Appeals
## FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

May 08, 2024

Mr. Philip Devlin
Western District of Texas, Pecos
United States District Court
410 S. Cedar Street
U. S. Post Office & Courthouse
Room 203
Pecos, TX 79772-0000

      No. 23-50305    Ramirez v. Plains All Amer GP
                           USDC No. 4:21-CV-70

Dear Mr. Devlin,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                                      Sincerely,

                                      LYLE W. CAYCE, Clerk

                                      By: _____
                                      Lisa E. Ferrara, Deputy Clerk
                                      504-310-7675

cc:
      Ms. Kyla Gail Cole
      Mr. Tyler James Eyrich
      Mr. Samuel J. Stennis
      Ms. Holly B. Williams

United States Court of Appeals
for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
April 3, 2024
Lyle W. Cayce
Clerk

No. 23-50305

Camilo Ramirez,

*Plaintiff—Appellant,*

versus

Plains All American GP, L.L.C.,

*Defendant—Appellee.*

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:21-CV-70

Before King, Ho, and Engelhardt, *Circuit Judges*.

Per Curiam:*

This appeal arises out of a jury verdict finding the defendant-employer not liable for age discrimination against its former employee. The former employee asserts that the district court erred in (1) denying his *Batson* challenge and (2) rejecting his proposed cat's paw jury instruction. For the following reasons, the judgment of the district court is AFFIRMED.

I.    Factual and Procedural Background

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-50305

Camilo Ramirez worked as a driver for Plains All American GP, L.L.C. ("Plains") beginning in approximately 1996. Plains is a crude oil transporter that relies on its trucking department to transport the oil from lease sites to refineries and truck facilities. Other than a short period when he worked for a competitor, Ramirez drove trucks for Plains for almost twenty-five years.

On August 30, 2020, Plains terminated Ramirez following a series of workplace violations. In July 2018, Ramirez received a corrective action report—designated "Warning #1"—for failing to properly haul a load of oil. In April 2019, Ramirez received another corrective action report—designated "Warning #2 Final"—after an accident caused by his failure to properly conduct a pre-trip inspection. In November 2019, Ramirez received a corrective action report for failing to properly work and treat a load of oil. Because warnings are only in effect for twelve months, this warning was also designated "Warning #2 Final" based on the timing of the previous violations. In August 2020, Ramirez received another corrective action report for his failure to stay within twenty-five feet of his vehicle during the pumping process. Again, this was designated "Warning #2 Final" because of the violation's timing. Finally, two days after the August 2020 incident, Ramirez argued with one of Plains' customers, left the lease location without ensuring his vehicle's vent was closed, exceeded the speed limit, and damaged his vehicle while driving. Shortly thereafter, Plains' Managing Director of Trucking, David Danielson, reviewed all relevant incident reports and the recommendations made by Ramirez's immediate supervisors. Based on this information, Danielson decided to terminate Ramirez.

Ramirez filed suit against Plains in August 2021, alleging that Plains discriminated against him on the basis of age and national origin when they fired him. Ramirez alleged that, in the Pecos District where he worked, only three drivers were terminated from January 2015 to the end of 2022, and two

of those drivers—including himself at age sixty-four—were the oldest in the district. Ramirez alleged that his immediate supervisor, Wayland Gene Durham, a forty-five-year-old man, talked to Ramirez about the possibility of retiring in exchange for a severance package. Ramirez further alleged that other, younger drivers committed the same or similar workplace violations, yet were not fired. According to Ramirez, when he was ultimately terminated, he was replaced with a younger driver who was forty years old at the time. Finally, Ramirez alleged that Danielson "rubberstamped" the termination without interviewing Ramirez or conducting his own investigation into the corrective action reports.

The district court granted summary judgment in favor of Plains on Ramirez's claim for national origin discrimination. The case then proceeded to trial on Ramirez's age discrimination claim. The jury found that Plains did not discriminate against Ramirez based on his age, and final judgment was entered in favor of Plains on March 27, 2023. Ramirez timely appealed.

## II. Standards of Review
### a. *Batson* challenges

The Supreme Court describes the appellate standard of review for a trial court's factual determinations during a *Batson* challenge as "highly deferential." *Snyder v. Louisiana*, 552 U.S. 472, 479 (2008). "On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Id.* at 477. "The district court's decision is clear error 'only if it is implausible in light of the record considered as a whole.'" *United States v. Thomas*, 847 F.3d 193, 208 (5th Cir. 2017) (quoting *Brumfield v. Cain*, 808 F.3d 1041, 1057 (5th Cir. 2015)).

### b. Jury instructions

"We review challenges to jury instructions for abuse of discretion and afford the trial court great latitude in the framing and structure of jury

instructions." *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 240 (5th Cir. 2014). "In order to demonstrate reversible error, the party challenging the instruction must show that the charge 'creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations.'" *Id.* (quoting *Taita Chem. Co. v. Westlake Styrene, LP*, 351 F.3d 663, 667 (5th Cir. 2003)). "The instructions need not be perfect in every respect provided that the [charge] in general correctly instructs the jury, and any injury resulting from the erroneous instruction is harmless." *Rogers v. Eagle Offshore Drilling Servs., Inc.*, 764 F.2d 300, 303 (5th Cir. 1985). "We do not reverse on the grounds of an erroneous instruction if the error 'could not have affected the outcome of the case.'" *Eastman Chem. Co.*, 775 F.3d at 240 (quoting *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1318 (5th Cir. 1994)).

### III. Analysis

Ramirez raises two arguments on appeal: (1) the district court erred in denying Ramirez's *Batson* challenge to the exercise of Plains' peremptory strikes; and (2) the district court erred in refusing to give a cat's paw instruction to the jury. We address each argument in turn.

#### a. *Batson* challenge

Ramirez first argues that the district court erred in denying his *Batson* challenge after Plains exercised "all three of its strikes against potential jurors of Hispanic national origin." Ramirez argues that Plains' stated reasons for striking the potential jurors were pretext for discrimination, and the district court should have reinstated the jurors. Thus, Ramirez asks this Court to reverse and remand for a new trial.

In *Batson v. Kentucky*, the Supreme Court held that the discriminatory striking of potential jurors by the Government based on the individuals' race—there, African American—violates the Constitution. 476 U.S. 79 (1986), *holding modified by Powers v. Ohio*, 499 U.S. 400 (1991). This

prohibition on the discriminatory use of peremptory strikes has since been extended to the civil context, *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991), and to include other ethnicities, *United States v. Munoz*, 15 F.3d 395, 399 (5th Cir. 1994) ("Striking a juror on the basis of race, including Hispanic ethnicity, clearly violates *Batson*."). *See also Flowers v. Mississippi*, 139 S. Ct. 2228, 2243 (2019) ("A defendant of any race may raise a *Batson* claim, and a defendant may raise a *Batson* claim even if the defendant and the excluded juror are of different races.").

The Supreme Court has "outlined a three-step process for evaluating claims that a [party] has used peremptory challenges in a manner violating the Equal Protection Clause." *Hernandez v. New York*, 500 U.S. 352, 358 (1991). First, the party making the *Batson* challenge must make a prima facie showing that the striking party exercised its peremptory challenge on the basis of race (or other protected characteristic). *Id.* "Second, if the requisite showing has been made, the burden shifts to the [striking party] to articulate a race-neutral explanation for striking the jurors in question." *Id.* at 358–59. "Finally, the trial court must determine whether the [challenging party] has carried his burden of proving purposeful discrimination." *Id.* at 359.

"The trial court's decision on the ultimate question of discriminatory intent is a finding of fact usually accorded great deference on appeal because of the inherent credibility assessment." *Moore v. Keller Indus., Inc.*, 948 F.2d 199, 201 (5th Cir. 1991). "The district court has the discretion to fashion the procedure necessary to evaluate counsel's race-neutral explanation." *Id.* "Once counsel has offered a race-neutral explanation and the trial court has ruled on the ultimate issue of intentional discrimination, we need consider only the sufficiency of the race-neutral reasons articulated by" the striking party. *Id.* This is because "the job of enforcing *Batson* rests first and foremost with trial judges." *Flowers*, 139 S. Ct. at 2243.

No. 23-50305

Here, Ramirez raised a prima facie valid *Batson* challenge with the district court when Plains used all of its peremptory strikes on three Hispanic potential jurors. *See Thomas*, 847 F.3d at 208 (challenging party makes out prima facie case where striking party used all of its strikes on White jurors only). Thus, the burden shifted to Plains to provide race-neutral explanations for striking these potential jurors.

In *Hernandez v. New York*, the Supreme Court explained that a race-neutral explanation is based upon something other than the juror's race. 500 U.S. at 360. This second step of the *Batson* process "does not demand an explanation that is persuasive, or even plausible." *Purkett v. Elem*, 514 U.S. 765, 768 (1995). Instead, the question here is the "facial validity" of the striking party's explanation. *Hernandez*, 500 U.S. at 360. "Unless a discriminatory intent is inherent in the [striking party's] explanation, the reason offered will be deemed race neutral." *Id.* The striking party's "explanation for a peremptory strike need not rise to the level of a challenge for cause; rather, it merely must contain a clear and reasonably specific articulation of legitimate reasons for the challenge." *United States v. Clemons*, 941 F.2d 321, 325 (5th Cir. 1991) (citing *United States v. Roberts*, 913 F.2d 211, 214 (5th Cir. 1990)). Further, this Court has noted that a party's race-neutral explanation "need not be quantifiable and may include intuitive assumptions upon confronting a potential juror." *Id.* Ultimately, the district court must consider a race-neutral explanation "in light of all of the relevant facts and circumstances, and in light of the arguments of the parties." *Flowers*, 139 S. Ct. at 2243.

We agree with the district court that counsel for Plains gave sufficient race-neutral explanations for striking each potential juror. First, Ramirez concedes that Plains provided a race-neutral reason for striking the first Hispanic individual, Juror Number 7, who worked in the U.S. Attorney's Office as an administrative assistant.

No. 23-50305

For the second Hispanic individual, Juror Number 15, Plains' counsel stated that the potential juror knew one of the other prospective jurors, that he was "wishy washy" in his responses, and that Plains "wanted someone who would do a better job on the jury." Ramirez responded that the other juror that Juror Number 15 allegedly knew had already been struck from the panel and that Juror Number 15 had "self-rehabilitated." The district court ultimately concluded that Plains' counsel asserted "arguable reasons why that individual would be struck" and that at least two other Hispanic potential jurors were not struck, demonstrating a lack of bias.

The district court's decision to deny this *Batson* challenge was not clearly erroneous where Plains' counsel provided a race-neutral explanation that Plains was not satisfied with Juror Number 15's "ability to calmly, clearly, and confidently express his opinions during voir dire." This explanation is facially valid, reflecting the kind of "intuitive assumption" about a potential juror's demeanor and attitude that is permitted during voir dire. *See Clemons*, 941 F.2d at 325. Ramirez has failed to show clear error where Plains' counsel demonstrated plausible reasons for striking Juror Number 15.

For the third Hispanic individual, Juror Number 17, Plains' counsel asserted that the potential juror's lack of a job and her husband's job as a lease operator (a position that Ramirez had allegedly had a conflict with in the past) were cause for concern. Ramirez responded that other potential jurors held similar roles as Juror Number 17's husband, yet were not struck. Further, Ramirez argued that Juror Number 17's questionnaire was simply blank with respect to her occupation, and Plains' counsel did not question her about employment at all. However, as both Plains' counsel and the district court pointed out, each party had access to a plethora of information provided by the court, which included employment information. The district court

7

denied the *Batson* challenge, stating that Plains' counsel provided an adequate, race-neutral reason for the strike.

We again conclude that the district court's denial of the *Batson* challenge was not clearly erroneous where Plains provided a race-neutral explanation that it sought employed jurors who "would have a better general understanding of employment and how poor work performance leads to termination." While Ramirez is correct that a striking party's "failure to question a potential juror about a characteristic that the [party] asserts is important" may be evidence of pretext, a lack of questions alone is not determinative. *Reed v. Quarterman*, 555 F.3d 364, 377 (5th Cir. 2009). Where "employment and prior jury service questions [are] on the juror questionnaire . . . it does not automatically follow that absence of the questions in *voir dire* is indicative of pretext." *Woodward v. Epps*, 580 F.3d 318, 340 (5th Cir. 2009). Here, Plains had the relevant employment information before voir dire began, so the lack of questioning does not indicate pretext for striking Juror Number 17. Combined with the additional factor of Juror Number 17's husband's occupation, her own lack of employment provides an adequate race-neutral reason for the strike. Ramirez has failed to demonstrate that the district court's denial of the *Batson* challenge was clearly erroneous.

### b. Cat's paw jury instruction

Ramirez next argues that the district court erred in denying his request for a cat's paw jury instruction. Plains responds that, whether or not such an instruction would have been permissible, the district court did not abuse its discretion by omitting Ramirez's proposed instruction.

We review a challenge to jury instructions under a two-prong inquiry. *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 291 (5th Cir. 2019). "First, the challenger must demonstrate that the charge as a whole creates substantial

and ineradicable doubt whether the jury has been properly guided in its deliberations." *Pelt v. U.S. Bank Tr. Na'l Ass'n*, 359 F.3d 764, 767 (5th Cir. 2004) (quoting *Johnson v. Sawyer*, 120 F.3d 1307, 1315 (5th Cir. 1997)). "Second, even if the jury instructions were erroneous, we will not reverse if we determine, based upon the entire record, that the challenged instruction could not have affected the outcome of the case." *Id.*

Here, Ramirez sought to include the cat's paw theory in the jury instructions. Plaintiffs use this theory of liability "when they cannot show the decisionmaker—the person who took the adverse employment action—harbored any retaliatory animus." *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015). "Under this theory, a plaintiff must establish that the person with a retaliatory motive somehow influenced the decisionmaker to take the retaliatory action." *Id.* "Put another way, a plaintiff must show that the person with retaliatory animus used the decisionmaker to bring about the intended retaliatory action." *Id.*

Plains directs the Court's attention to our decision in *Wantou v. Wal-Mart Stores Tex., L.L.C.*, where we held that the district court's refusal to include a cat's paw jury instruction was not an abuse of discretion. 23 F.4th 422, 436 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 745 (2023), *reh'g denied Wantou v. Wal-Mart Stores Tex., L.L.C.*, 143 S. Ct. 1049 (2023). There, we noted that "[i]f we were to consider the question in the first instance, we might find no harm in providing a Cat's Paw instruction." *Id.* However, we held that the plaintiff's proposed instructions were confusing, if not internally inconsistent. *Id.* Further, we held that the plaintiff "was able to provide his full story in closing and present all of his arguments to the jury without objection." *Id.* The general description of the defendant as "Defendant Wal-Mart" could include, we held, each co-worker or supervisor in the plaintiff's requested instruction because the final instruction did not identify specific decisionmakers. *Id.* Thus, we found no

error in the district court's rejection of the specific cat's paw instruction that the plaintiff requested. *Id.*

Similarly, here, Ramirez's requested instruction specifically listed Gene Durham, Lee Oliver, and Pierce Broach as supervisors who may have discriminated against him because Danielson, as the final decisionmaker, explicitly testified that he did not consider Ramirez's age in the termination process. However, on the district court's verdict form and instructions, the questions referred simply to "Defendant" and included an "Agency" instruction explaining that a corporation can only act through natural persons such as agents or employees. Much like *Wantou*, then, the jury was not directed to a specific employee by name on the verdict form, and Ramirez was permitted to freely argue the roles of various actors in his claim. We find *Wantou* instructive here, and come to the same result: the district court did not abuse its discretion in rejecting the requested cat's paw jury instruction.

Plains also points out that Ramirez failed to identify any specific evidence of discriminatory animus at the charge conference in support of the cat's paw instruction. Other than a comment regarding retirement and severance packages, Ramirez did not put forth evidence that would tend to show the animus required to succeed on his claim. *See Pelt*, 359 F.3d at 767. Thus, the district court appropriately exercised its discretion in concluding that Ramirez did not provide the requisite evidence to justify the cat's paw instruction, where such instruction likely would not affect the outcome of his case.

## IV. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.



United States Court of Appeals
for the Fifth Circuit

Certified as a true copy and issued
as the mandate on **May 08, 2024**

Attest:
*Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

_____

No. 23-50305

_____

United States Court of Appeals
Fifth Circuit
**FILED**
April 3, 2024
Lyle W. Cayce
Clerk

CAMILO RAMIREZ,

                        *Plaintiff—Appellant*,

versus

PLAINS ALL AMERICAN GP, L.L.C.,

                        *Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:21-CV-70

_____

Before KING, HO, and ENGELHARDT, *Circuit Judges*.

J U D G M E N T

This cause was considered on the record on appeal and the briefs on file.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED.

IT IS FURTHER ORDERED that each party bear its own costs on appeal.

Case: 23-50305  Document: 78-1  Page: 2  Date Filed: 05/08/2024

No. 23-50305

The judgment or mandate of this court shall issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later. *See* FED. R. APP. P. 41(b). The court may shorten or extend the time by order. *See* 5TH CIR. R. 41 I.O.P.